IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JENNIFER HASKINS, ADMINISTRATOR OF ESTATE OF ERNEST HASKINS, <br><br> Plaintiff, <br><br> v. <br><br> WASHINGTON ADVENTIST HOSPITAL, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 3:11CV515–HEH |

## MEMORANDUM OPINION
(Defendant's Motion to Dismiss)

Now pending before the Court is a Motion to Dismiss filed by Defendant Washington Adventist Hospital ("Defendant") for lack of personal jurisdiction, improper venue, failure to satisfy provisions of the Maryland Health Care Claims Act, and failure to state a claim upon which relief can be granted. Alternatively, Defendant seeks a more definite statement with respect to certain portions of the Complaint. As the Administrator of the Estate of Ernest Haskins ("Haskins"), Plaintiff Jennifer Haskins ("Plaintiff") filed a *pro se* Complaint on August 8, 2011, alleging that Defendant was negligent in providing medical care to Haskins during his stay at Washington Adventist Hospital in April and June of 2010. The parties have submitted memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court and

argument would not aid in the decisional process. For the reasons discussed herein, the motion will be denied.

## I. BACKGROUND

The events giving rise to this litigation center around Haskins' approximate fifty-two day stay at Washington Adventist Hospital located in Takoma Park, Maryland. According to the Complaint, Haskins, a Virginia resident, began treatment for metastatic multiple myeoloma cancer of the spine and a spinal fracture on April 9, 2010. His treatment, including a surgical procedure, continued through June 10, 2010. During this time, Haskins allegedly contracted a "MRSA infection" due to Defendant's negligence and "failure to follow standard of care procedures." (Pl.'s Comp. at ¶ 7.)

As a result of the MRSA infection, Plaintiff alleges that numerous nursing homes refused to accept Haskins and that his grandson was unable to visit him causing "emotional hardship on [him as he] was suffering from cancer." (*Id.* at ¶ 10.) During Haskins' stay at Washington Adventist Hospital, he also "sustained stage II sacral decubitus ulcers" causing him pain and suffering. (*Id.* at ¶ 11-12.) According to Plaintiff's Complaint, Defendant failed to apply effective treatments and failed to refer Haskins for treatment. As a result, the Maryland State Department of Health and Mental Hygiene allegedly issued a citation to Defendant. (*Id.* at ¶ 12.)

On June 10, 2010, Haskins was transferred by ambulance from Washington Adventist Hospital to the Envoy of Stratford Hills Nursing Home in Richmond, Virginia. According to the Complaint, Haskins' transfer occurred "without proper treatment, wound precautions, or instructions on the stage II ulcers." (*Id.* at ¶ 16-17.) Defendant

2

allegedly failed to provide instructions to the ambulance crew on Haskins' condition and neglected to document the ulcers on the "Transfer of Summary to the Envoy of Stratford Hills nursing home." (*Id.*)

According to the Complaint, Haskins did not receive any treatment for his ulcers until his admission to the Envoy of Stratford Hills Nursing Home. After approximately eighteen days, the nursing home allegedly transferred Haskins to "VCU for acute care", including a "debridement procedure . . . on July 2, 2010." (*Id.* at ¶ 19.) Despite this procedure, his ulcers worsened, evolving into stage IV ulcers, "exposing the bone." (*Id.* at ¶ 20.)

In sum, the Complaint alleges that Haskins contracted MRSA as a direct and proximate result of Defendant's negligence and "intentional tort". Plaintiff also claims that Defendant violated the Maryland Nurse Practice Act, along with "multiple federal and state (Virginia and Maryland) statutes." (*Id.* at ¶ 17.) On October 7, 2011, Defendant filed the instant motion to dismiss for lack of personal jurisdiction, improper venue, failure to satisfy provisions of the Maryland Health Care Claims Act, and for failure to state a claim upon which relief can be granted. Because this Court finds that it lacks personal jurisdiction over Defendant, it need not reach the other issues. In the interests of justice, however, the Court will *sua sponte* transfer this case to the United States District Court of Maryland, Greenbelt Division.

## II. STANDARD OF REVIEW

In cases where a Defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff ultimately carries the burden of proving grounds for jurisdiction by a

3

preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). When ruling on personal jurisdiction without holding an evidentiary hearing, a district court must view the facts in the light most favorable to the plaintiff and determine de novo whether he has made a prima facie showing of personal jurisdiction. *See Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

In evaluating its authority to exercise personal jurisdiction, the court must perform a two-step inquiry. First, the court must determine if the forum state's long-arm statute authorizes jurisdiction. *See Carefirst*, 334 F.3d at 396. In cases where jurisdiction is authorized by such statute, the court must next decide whether the exercise of personal jurisdiction comports with Fourteenth Amendment due process requirements. *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990).

The Fourth Circuit has held that Virginia's long-arm statute extends personal jurisdiction to the limits allowed by due process. *See Mitrano*, 377 F.3d at 406 (internal quotations omitted); Va. Code Ann. § 8.01-328.1 (2004). Thus, the statutory inquiry merges with the constitutional inquiry. *See Carefirst*, 334 F.3d at 396-97. It is equally well-settled, however, that Virginia's long-arm statute must be satisfied "even in those situations where it could plausibly be argued that a lesser standard would meet due process." *Robinson v. Egnor*, 699 F. Supp. 1207, 1211 (E.D. Va. 1988) (quoting *Willis v. Semmes, Bowen & Semmes*, 441 F. Supp. 1235, 1243 (E.D. Va. 1977)); *see also, Blue Ridge Bank v. Veribanc*, 755 F.2d 371, 371 (4th Cir. 1985). In other words, it is possible that situations could arise where a non-resident defendant's contacts with Virginia could

4

fulfill the dictates of due process, and yet escape the literal grasp of Virginia's long-arm statute. "Put another way, Virginia's long-arm statute provides a ceiling of procedural protections above the federal floor of constitutional due process." *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 423 (E.D. Va. 1996).

A court's exercise of jurisdiction over a nonresident defendant comports with due process provided that the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945) (internal quotation marks omitted). "[T]o justify an exercise of jurisdiction, a defendant's actions must have been directed at the forum state in more than a random, fortuitous, or attenuated way." *Mitrano*, 377 F.3d at 407. As a result, a defendant should "be able to anticipate being sued in a court that can exercise personal jurisdiction over him." *Id.*

The standard for determining the existence of personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with the forum state provide the basis for the suit. *See Carefirst*, 334 F.3d at 397. If so, those contacts may establish "specific jurisdiction." *See id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8, 104 S. Ct. 1868 (1984). To determine whether specific jurisdiction exists, the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v.*

*Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted). In contrast, to establish general jurisdiction, the defendant's activities within the state must have been both "continuous and systematic"—a necessarily more demanding standard than is necessary for establishing specific jurisdiction. *Id.*

### III.  ANALYSIS

In the instant case, Defendant claims that the Complaint fails to sufficiently establish personal jurisdiction over the Defendant under Virginia's long-arm statute, as well as the Fourteenth Amendment. Plaintiff's response fails to address with any clarity which provision of Virginia's long-arm statute authorizes jurisdiction or whether the facts satisfy due process.

As noted previously, because Virginia's long-arm statute is intended to extend personal jurisdiction to the limits permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry. *See Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). However, because it must be satisfied even in cases where a lesser standard would comport with due process, the Court considers it separately here.

Turning to Virginia's long-arm statute, the relevant portions provide that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: 1.) Transacting any business in this Commonwealth; 2.) Contracting to supply services or things in this Commonwealth; 3.) Causing tortious injury by an act or omission in this Commonwealth; [or] 4.) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth . . . .

6

Va. Code Ann. § 8.01-328.1(A)(1) (2004). Plaintiff's response to the motion to dismiss fails to identify which, if any, statutory provision applies to the instant case, nor does the Court independently find any of the requirements to be satisfied.

Specifically, the medical injuries giving rise to this cause of action did not occur as a result of Defendant transacting any business in the Commonwealth. Rather, Haskins travelled to Maryland where he allegedly received substandard treatment. (*See* Pl. Comp. ¶ 6.) Likewise, the cause of action did not arise as a result of Defendant contracting to supply services or things in the Commonwealth. In fact, Plaintiff's response concedes that the "patient was a human being, not a package of goods or services." (Pl.'s Resp. Def.'s Mot. Dismiss at 2.) While Defendant admits to contracting with a third-party transportation service to transport Haskins to the Virginia facility, the arrangement was made in Maryland with a transportation service located in Maryland. (Mot. Dismiss at 8-11.) Furthermore, the provision of such transportation did not give rise to Haskins' injuries.

Turning to the third provision of Virginia's long-arm statute, Defendant did not cause a tortious injury by an act or omission occurring in Virginia. Defendant's alleged negligence transpired solely on the hospital premises in Maryland. Finally, the fourth provision also does not apply to the immediate case. As the statute specifies, in cases where tortious injury is caused by an act or omission outside of the Commonwealth, jurisdiction only arises where the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Va. Code Ann. §

8.01-328.1(A)(1) (2004). As stated in the motion to dismiss and supported by an accompanying affidavit, Defendant does not regularly do business or engage in any persistent conduct within the Commonwealth of Virginia. (Def.'s Mot. Dismiss at 9.) Moreover, although Defendant may accept patients from Virginia, it does not derive substantial revenue from any services rendered within the Commonwealth. (*Id.*) For these reasons, Plaintiff has failed to persuade this Court that it would be appropriate to exercise personal jurisdiction over Defendant.

Because Plaintiff has failed to demonstrate that Virginia's long-arm statute confers jurisdiction, the Court need not reach the constitutional due process component. The Court notes, however, that Plaintiff has also failed to provide evidence that Defendant purposefully availed itself of the privilege of conducting activities in the forum state. Plaintiff merely contends that Defendant transferred Haskins to the Envoy of Stratford Hills Nursing Home, located in Richmond, Virginia. However, as provided in its motion to dismiss, Defendant does not transport patients to the Commonwealth of Virginia. Rather, in cases where a patient requires a transfer, Defendant contracts with a third party located in Maryland to provide the transportation. (Mot. Diss. at 10-11.) The Fourth Circuit has previously held that such contacts are de minimis and thus, fail to confer specific jurisdiction. *See O'Neal v. Hicks, Co.*, 537 F.2d 1266, 1267-68, (4th Cir. 1976) (holding that jurisdiction could not be established where the sole thread linking the defendant to the forum state was arranging for the transportation of goods to the state.) Therefore, Plaintiff's jurisdictional claim fails on both fronts.

Rather than dismiss Plaintiff's Complaint in its entirety, however, the Court will transfer the case to the United States District Court for the District of Maryland, Greenbelt Division, pursuant to 28 U.S.C. § 1631. In relevant part, 28 U.S.C. § 1631 provides that upon finding it lacks jurisdiction, a court may "transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed" if it is in the interest of justice. Here, the Court notes that as a *pro se* litigant, Plaintiff would face considerable burdens, including the costs associated with producing and mailing copies of the Complaint, were she forced to refile in another District. Accordingly, in the interests of justice, the Court transfers this case to the United States District Court for the District of Maryland, Greenbelt Division for further processing

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion will be denied, and the Court will transfer the Plaintiff's Complaint.

An appropriate Order shall accompany this Memorandum Opinion.

                                                   /s/
                                      Henry E. Hudson
                                      United States District Judge

Date: Jan. 11, 2012
Richmond, VA